JAMES E. GRIFFITH, *et al.*

*v.*

GEORGE TRANSFER AND RIGGING, INC.

(No. 13193)

Submitted January 16, 1973.    Decided December 18, 1973.

*Donell, Tarr, DeLaMater & Hagg, W. Dean DeLaMater* for appellant.

*Pinsky, Mahan, Barnes, Watson, Cuomo & Hinerman, Richard W. Barnes, Frank Cuomo, Jr.,* for appellees.

CAPLAN, JUSTICE:

This is an appeal from a final order of the Circuit Court of Brooke County entered in an action which arose out of a collision between a vehicle owned and operated by defendant John Herilla and a motorcycle operated by plaintiff Gary Lee Griffith. At the time of the collision the Herilla vehicle was under lease to defendant George Transfer and Rigging, Inc. That action was instituted by James E. Griffith, individually, and by Gary Lee Griffith by James E. Griffith, his father and next friend.

George Transfer and Rigging, Inc. is engaged in the business of transporting property for hire and in furtherance thereof has acquired and holds the necessary permits, licenses and certificates from the Interstate Commerce Commission and regulating authorities of several states. As a part of its business George Transfer leased certain trucking equipment from individual owners. Pursuant to that practice George Transfer

entered into lease agreements with John Herilla for the exclusive use of a tractor and trailer. The agreements were designated "Motor Vehicle Lease Agreement No. 907026" and "Trailer Lease Agreement No. 9030314."

Under the provisions of these agreements John Herilla, the owner, was to supply the driver of the aforesaid equipment and any other employees necessary for the fulfillment of his obligations. He was to supply the equipment and driver at George Transfer's terminal at Mingo Junction, Ohio. Basically, the agreement provided that the owner would maintain the equipment in good repair at his expense; that he would pay such expenses as motor fuel, oil, tires and other accessories; and that he would pay taxes, assessments, licenses and all other expenses necessary for the operation of the leased equipment. It was therein specified that the relationship between the parties was that of independent contractor and not that of employer and employee.

It is further provided in the agreement that George Transfer, as a common carrier by motor vehicle, is subject to Interstate Commerce Commission regulations and that Mr. Herilla shall comply fully with such regulations. The agreement then reads "but that George has not the right to, and will not control the manner or prescribe the method of doing that portion of the operations which is contracted for in this Agreement by Owner, except such control as can reasonably be construed to be required by said regulations." The parties agreed that if the owner or any of his employees operate the subject equipment in any manner which varies from the regulations or the express directions or orders of George Transfer or beyond the scope of George's operating authority or use the equipment for his own purpose or the purpose of any person other than George, the agreement shall terminate and all obligations and liability of the lessee shall immediately cease.

These agreements, prepared by George Transfer, were entered into on June 1, 1966 and were in effect on

July 13, 1967, the day of the collision which gave rise to this action. On July 12, 1967 John Herilla, the owner and driver of the leased equipment, after having delivered a shipment of steel to Richmond, Virginia, returned to George Transfer's terminal at Mingo Junction, Ohio where he endeavored to obtain another load. Finding none, he returned the next morning when he was told that no loads suitable to his equipment were available. He remained at the terminal, awaiting an appropriate load, until 4:00 P.M. when he informed the dispatcher that he wanted to take the tractor trailer to his home in Bentleyville, Pennsylvania for the purpose of repairing a spring leaf. He said he would return on Monday morning, July 17, 1967. According to Mr. Herilla's testimony he was taking his equipment home to make repairs at the direction of George Transfer's dispatcher. He further testified that in order to take any time off he had to obtain permission from the dispatcher.

During this forty-five mile trip from the George Transfer terminal to his home, John Herilla, while driving the subject tractor-trailer through Wellsburg, West Virginia, was involved in a collision with a motorcycle driven by plaintiff Gary Lee Griffith. Inasmuch as the jury has decided the question of liability in favor of the plaintiffs and no error has been assigned in relation to the finding of negligence on the part of Herilla, it is not deemed necessary to further detail the circumstances of the collision.

As a result of that collision the plaintiffs instituted the civil action alluded to above. In the complaint filed pursuant thereto it was alleged that Gary Lee Griffith was severely and permanently injured by reason of the negligent operation of the tractor trailer while operated by John Herilla. Alleging that Herilla was driving the vehicle pursuant to his "agency and employee relationship" with defendant George Transfer, the plaintiffs imputed the alleged negligence of Herilla to George Transfer. In that action James E. Griffith also sought

recovery of medical expenses incurred by reason of injuries suffered by his son and damages for the loss of the latter's wages.

George Transfer moved to dismiss the complaint for failure to state a cause of action upon which relief could be granted on the ground that there were insufficient facts alleged to show any duty on its part to the plaintiffs. It also moved to strike all allegations in the complaint pertaining to an agency or master-servant relationship between it and John Herilla, contending that the allegations of such relationship were insufficient to impute Herilla's conduct to George Transfer. These motions were overruled by the court. George Transfer, in its answer to the complaint, denied that John Herilla was driving his tractor-trailer rig pursuant to any agency or employee relationship. Defendant George Transfer subsequently filed a Motion for Summary Judgment contending that as a matter of law no such agency or employee relationship existed and that, therefore, the negligence, if any, of Herilla could not be imputed to it. This motion was also overruled. A jury trial followed, at the conclusion of which a verdict for the plaintiffs in the sum of $4,000.00 was returned against George Transfer and Rigging, Inc. and John Herilla. It is from the judgment entered on that verdict that this appeal is prosecuted by George Transfer. John Herilla did not seek an appeal and the judgment against him is final.

The appellees cross assign error on this appeal alleging that the court should have granted its motion for a default judgment on the ground that George Transfer failed to answer the complaint within the period prescribed by the rules of procedure and that no good cause was shown for the granting of its motion for an enlargement of time.

The authority cited by the appellees on their cross assignment of error relates largely to the setting aside of

default judgments. In the instant case the circuit court refused to enter a default judgment on the motion of the appellees. It has long been well settled that the granting or refusal of a default judgment lies in the exercise of the trial court's discretion and that the action of the court will not be disturbed unless there is evidence that there has been a clear abuse of such discretion. See *McDaniel v. Romano,* 155 W. Va. 875, 190 S.E.2d 8 (1972); *Intercity Realty Company v. Gibson,* 154 W.Va. 369, 175 S.E.2d 452 (1970); *Vandervelde v. Put & Call Brokers and Dealers Association, Inc.,* 43 F.R.D. 14 (D.C., N.Y. 1967); and *Anderson v. Stanco Sports Library, Inc.,* 52 F.R.D. 108 (D.C., S.C. 1971). Here the court found that the failure of the defendant, George Transfer, to file a timely answer to the complaint was occasioned by what the court termed excusable neglect and refused to enter a default judgment. Inasmuch as we cannot say that the court was clearly wrong in so ruling, such ruling will not be disturbed on this appeal.

The principal issues presented on this appeal are: (1) Was there, as a matter of law, a sufficient relationship shown between John Herilla and George Transfer from which the law would impute the negligence of the former to the latter? (2) Even if there were such a relationship, was there, as a matter of law, a sufficient showing that John Herilla was acting within the scope of any employment he might have had with George Transfer at the time of the accident?

The first issue brings into focus the relationship between the two defendants, John Herilla and George Transfer. Such relationship purports to be settled by the terms of the agreement wherein it states specifically that "The relationship herein created is that of independent contractor and not that of employer and employee." As noted herein the agreement was prepared by George Transfer. It is a universally accepted principal of law that under such relationship the negligence of an independent contractor is not imputed to one who

contracted for his services. While we do not depart from such general rule, the instant circumstances create an exception thereto. Here we have George Transfer hauling property for hire under the authority of an Interstate Commerce Commission Certificate and permits from state regulatory bodies. It has a contract with Herilla under the terms of which it employs him and uses his equipment to perform the aforesaid functions. The independent contractor, John Herilla, is under the complete control of George Transfer in the performance of such functions; his equipment bears the name "George Transfer and Rigging, Inc.,"; the I.C.C. Certificate No., as well as the regulatory permit numbers of the various state regulatory bodies, prominently displayed on Herilla's equipment; and the equipment can be used only in furtherance of George Transfer's business, to the exclusion of any other use, even by the owner.

Although under the general rule John Herilla would be regarded as an independent contractor, relieving George Transfer of liability for his negligence, by reason of the facts disclosed by this record, George Transfer, being the holder of franchises from public authorities becomes liable for the negligence of one with whom he contracts to carry out his franchise operations. This proposition is clearly expressed in *War Emergency Co-op Ass'n. v. Widenhouse,* 169 F.2d 403 (1948), wherein the court, quoting from *Brown v. L. H. Bottoms Truck Lines,* 227 N.C. 299, 42 S.E.2d 71 (1947), said "'public policy requires that the holder of a franchise or certificate from the Interstate Commerce Commission for the operation of freight vehicles in interstate commerce upon the public highways be held responsible for the operation of such vehicles under said franchise or certificate, by independent contractors of such certificate holders, their servants and agents. Otherwise, the public might be entirely deprived of the safeguards to the public required by the Interstate Commerce Commission, by means of certificate holders evading their responsibility by the employment of irresponsible persons as independent

contractors.' " That case held the holder of franchises from a public authority liable even though the negligence was committed by a driver for an independent contractor.

Another case reflecting this view is *Hodges v. Johnson,* 52 F. Supp. 488 (1943). Therein the court recognized the general rule which would exonerate a party from the negligence of his independent contractor but noted the exception. As stated in RESTATEMENT OF THE LAW, TORTS, Second, § 428, "An individual or corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity." The court in *Hodges* further said that where a public authority grants to an individual or a corporation the right to engage in dangerous activities, which right is denied the general public, the duty to safeguard the public while performing its franchise activities is not delegable and the franchise holder is responsible for the conduct of those whom it permits to act under its franchise and this includes an independent contractor. The rationale of this public policy consideration is clear. Were this exception not created the owner of a public authority franchise would be free to contract with irresponsible persons and by reason thereof could fully escape his liability under the authority granted him.

It is noted that this exception relates to an operation which "involves an unreasonable risk of harm to others". As reflected by numerous authorities, the instant case, that is, the carriage of freight upon public highways in high-powered tractor trailers, demonstrates a situation which involves an unreasonable risk of harm to others. That these behemoths of the highways create a danger to the travelling public and involve an "unreasonable risk of harm to others" is fully recognized and acknowledged in the enactment of comprehensive regulatory laws governing their operation. Clearly, all legislative bodies

creating regulatory agencies have considered these franchise operations to be dangerous to the public using the highways. *Venuto v. Robinson,* (C.A. 3d) 118 F.2d 679 (1941); *Barry v. Keeler,* 322 Mass. 114, 76 N.E.2d 158 (1947); *Bates Motor Transport Lines, Inc. v. Mayer,* 213 Ind. 664, 14 N.E.2d 91 (1938); *Kissell v. Motor Age Transit Lines,* 357 Pa. 204, 53 A.2d 593 (1947); *Liberty Highway Co. v. Callahan,* 24 Ohio App. 374, 157 N.E. 708 (1926); *Cotton v. Ship-By-Truck Co.,* 337 Mo. 270, 85 S.W.2d 80 (1935); *State ex rel. Algiere v. Russell,* 359 Mo. 800, 223 S.W.2d 481 (1949); 2B M.J., *Automobiles,* § 49; 53 Am. Jur. 2d, *Master and Servant,* § 423; Annotation, 16 A.L.R.2d 960.

The general rule expressed above and to which we adhere is succinctly stated in 8 Am. Jur. 2d, *Automobiles and Highway Traffic,* § 568 as follows: "The holder of such a highway permit [I.C.C. Certificate] is liable for another's negligent operation of a motor vehicle under such a permit, and cannot relieve himself of this liability by an arrangement whereby the other is deemed an independent contractor * * *."

The circumstances revealed in the instant case bring the relationship between these parties within the principles expressed by the foregoing authorities. George Transfer, being the holder of public authority permits and certificates, in accordance with public policy considerations, must be held responsible for the negligence of Herilla, even though in the contract the latter has been designated an independent contractor. Therefore, such negligence was properly imputed to George Transfer.

Having concluded that the above related circumstances created an effective employer-employee relationship, the question remaining for resolution is whether Herilla was acting within the scope of his employment at the time of the collision. The universally recognized rule is that an employer is liable to a third person for any injury to his person or property which results proximately from tortious conduct of an employee acting within the scope

of his employment. The negligent or tortious act may be imputed to the employer if the act of the employee was done in accordance with the expressed or implied authority of the employer. 53 Am. Jur. 2d, *Master and Servant,* § 426.

While the term "scope of employment" is frequently related to workmen's compensation cases, wherein it has been held that an employee is within the scope of his employment when he does that which is reasonably necessary to his employment, *Archibald v. Workmen's Compensation Commission,* 77 W.Va. 448, 87 S.E. 791, such rule has likewise been applied in tort actions. See *DeMirjian v. Ideal Heating Corp.,* 278 P.2d 114 (Cal. 1954); *Freehill v. Consumers Company,* 243 Ill. App. 1 (1927); *J. C. Penney Co., Inc. v. McLaughlin,* 137 Fla. 594, 188 So. 785.

In *Cochran v. Michaels,* 110 W.Va. 127, 157 S.E. 173 the following language from Mechem on Agency, Second Edition, § 1879 was quoted: " '* * * a servant is acting within the course of his employment when he is engaged in doing, for his master, either the act consciously and specifically directed or any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act or a natural, direct and logical result of it. If in doing such an act, the servant acts negligently, that is negligence within the course of employment.' " In *Cochran* the court further said "Whether an act by a servant is within the scope of his employment is determined by the relation which the act bears to the employment" and "An act specifically or impliedly directed by the master, or any conduct which is an ordinary and natural incident or result of that act is within the scope of the employment."

In *Levine v. Peoples Broadcasting Corp.,* 149 W.Va. 256, 140 S.E.2d 438, the court was concerned with the question as to whether an employee was acting within the scope of his employment at the time he negligently damaged the plaintiff's property. Therein the following instruction was approved:

" 'The Court instructs the jury that if you believe from the evidence that Carl McKinney was acting within the scope of his employment and about his employer's business, the jury are instructed that a mere deviation or departure from the usual and ordinary course and activities of this employment, even to accomplish some private purpose of his own in connection with the business of his employer, does not of itself, as a matter of law, relieve the employer of liability. Whether such departure or deviation is sufficient to relieve the defendant of responsibility for McKinney's act is a question of fact to be determined by the jury from the facts and circumstances proved in this case.' "

"Scope of employment" is a relative term and requires a consideration of surrounding circumstances including the character of the employment, the nature of the wrongful deed, the time and place of its commission and the purpose of the act. 53 AM. JUR. 2d, *Master and Servant,* § 427. As noted in *Levine* these considerations ordinarily are determined by the jury.

In the instant case Herilla, while under the exclusive control of George Transfer, was driving to his home in the leased vehicle at the time of the collision. In the normal course of his employment he would naturally drive this vehicle to and from his place of employment, that being George Transfer at Mingo Junction, Ohio and his residence at Bentleyville, Pennsylvania. Herilla testified that he received permission from the dispatcher and, in fact, was instructed by him to return to his home to repair the tractor. In this context it became the province of the jury to determine whether Herilla, at the time of the collision, was acting within the scope of his employment. That question was determined by the jury which determination, in view of the evidence, we cannot say was clearly wrong.

In view of the foregoing, the judgment of the Circuit Court of Brooke County is affirmed.

*Affirmed.*