972 F.2d 342
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Larry K. SULFRIDGE; Leslie G. Sulfridge, Plaintiffs- Appellants,
v.
84 LUMBER COMPANY, a corporation; Lumber Company, a general
partnership; Pierce-Hardy Real Estate,
Incorporated, partner; 84 Associates,
Incorporated, partner,
Defendants-Appellees.
 No. 91-2168 84.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: January 17, 1992
Decided: August 7, 1992
 
 George J. Cosenza, COSENZA, UNDERWOOD & MARSHALL, Parkersburg, West Virginia, for Appellants.
 Joseph F. McDonough, James R. Walker, MANION MCDONOUGH & LUCAS, P.C., Pittsburgh, Pennsylvania, for Appellees.
 Before WIDENER, SPROUSE, and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Larry K. Sulfridge appeals the district court's grant of summary judgment to the Defendants in this diversity suit. Sulfridge brought suit based on theories of defamation, malicious prosecution, and intentional infliction of emotional distress. Sulfridge also claimed that 84 Lumber Company (84 Lumber) owed him $370 in reimbursements for petty cash Sulfridge had spent on 84 Lumber's behalf. 84 Lumber counterclaimed for $7,900 based on Sulfridge's conversion of 84 Lumber materials for which he had not paid. Because we find that the district court committed no error, we affirm.[1]
 
 
 2
 * In July 1989, it was discovered that Sulfridge, at that time the manager of the 84 Lumber store in Mineral Wells, West Virginia, had contracted with area home builders to construct homes on property he owned, in admitted violation of 84 Lumber's internal employment policy. During the internal investigation which followed, Sulfridge admitted to company representatives, Dennis Brua and Douglas Robinson, that he was using 84 Lumber materials to construct a home for resale at a Windsor Estates lot in Mineral Wells. When Robinson asked him to account for all 84 Lumber materials used at the Windsor Estates lot, Sulfridge took Robinson to the lot and helped him compile an inventory. Although Sulfridge maintained that he kept records of all the materials he used with formal invoices and in a notebook kept by 84 Lumber cashier, Cheryl Bauman, Sulfridge admitted that there were several items obtained from 84 Lumber for which he had not paid.[2] After an inventory of materials was compiled, Sulfridge offered to pay for the materials used, but 84 Lumber refused payment.
 
 
 3
 On July 27, 1989, Sulfridge was fired for violating 84 Lumber's policy prohibiting employees from building homes for resale.
 
 
 4
 After Sulfridge's termination, Robinson contacted Trooper Jeffrey Dean of the West Virginia State Police and informed him about his suspicions that Sulfridge had stolen from 84 Lumber. After conducting a further investigation, Dean presented the results of his investigation to Wood County prosecutor Michele Rusen. Rusen reviewed Dean's file and interviewed Robinson and another witness before seeking an indictment from a Wood County grand jury in April 1990.[3] Based on Dean's testimony, the grand jury indicted Sulfridge in April 1990 for embezzlement and grand larceny. However, with the prosecutor's consent, in May 1990 the indictment was dismissed with prejudice because there was insufficient evidence to obtain a conviction.
 
 
 5
 Sulfridge then brought suit on several theories, including defamation, malicious prosecution, and intentional infliction of emotional distress. Sulfridge's defamation claim was based on three communications4 made by 84 Lumber employees to third parties:
 
 
 6
 1. Robinson's statements to Trooper Dean about Sulfridge's suspected theft;
 
 
 7
 2. Robinson's statements to prosecuting attorney Rusen about Sulfridge's suspected theft;
 
 
 8
 3. A statement by Gene Hammrick, the manager of the 84 Lumber store located in Elkview, West Virginia, in response to an inquiry by Mike Inman about Sulfridge's suspected theft, which Hammrick allegedly made at the Elkview store in early August 1989.
 
 
 9
 The district court granted the Defendants' summary judgment motion. It dismissed Sulfridge's defamation claims relating to Robinson's statements by ruling that Sulfridge had failed to show that Robinson's statements fell outside the qualified privilege held by 84 Lumber. It dismissed Sulfridge's claim based on Hammrick's statement to Inman because of its belief that the statement itself was not defamatory, and even if it was, it was covered by 84 Lumber's qualified privilege. Alternatively, the district court found that 84 Lumber could not be held vicariously liable for Hammrick's statements.
 
 
 10
 The district court also concluded that the existence of probable cause precluded Sulfridge's claim for malicious prosecution and that the 84 Lumber's actions did not rise to the level required to maintain an action for intentional infliction of emotional distress.
 
 II
 
 11
 To maintain an action for defamation in West Virginia, a plaintiff must prove that a false defamatory statement referring to the plaintiff was made via non-privileged communication to a third party, which was caused by the publisher's negligence or intentional act, and injured the plaintiff. Straitwell v. National Steel Corp., 869 F.2d 248, 250 (4th Cir. 1989), citing Crump v. Beckley Newspaper, Inc., 320 S.E.2d 70, 77 (W. Va. 1984). A statement is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. Crump, 320 S.E.2d at 77. Sulfridge's claim is deficient because he cannot establish that the statement was not protected by a qualified privilege. See Straitwell, 869 F.2d at 251.
 
 
 12
 A qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter. Straitwell, 869 F.2d at 250-51; Crump, 320 S.E.2d at 78-79. A qualified privilege may apply to the publication of defamatory material by a defendant to protect or advance his own interest, to protect or advance the legitimate interests of others, or to protect or advance the mutual interests of the defendant publisher and the recipient. Id. at 79. Statements made by an employer, his agent, or his employees relating to the alleged criminal activities of his employee are generally protected by qualified immunity if they are made in good faith. See Straitwell, 869 F.2d at 252; McKinney v. K-Mart Corp., 649 F. Supp. 1217, 1222 (S.D.W. Va. 1986).
 
 
 13
 However, a qualified privilege may be lost if the publisher abuses it by intentionally publishing false material, publishing false material with reckless disregard for its truth or falsity, publishing false material to persons who have no reason to receive the information, publishing false material with a primary purpose unrelated to the purpose of the privilege, or publishing with actual malice or bad motive. Straitwell, 869 F.2d at 251, citing Crump, 320 S.E.2d at 78. Determining whether a qualified privilege exists and whether it has been lost through abuse are questions of law for the court unless those decisions rest on controverted facts. Straitwell, 869 F.2d at 251; Crump, 320 S.E.2d at 81.
 
 
 14
 Sulfridge's theory of the case was that 84 Lumber abused its qualified privilege by publishing the defamatory statement[5] with actual malice. Here, it appears that Sulfridge has failed to present facts sufficient to raise a jury issue on malice with respect to the statements made by Robinson. Sulfridge has presented no evidence that Robinson's statements to Dean and the prosecuting attorney were made for any purpose other than to assist in a police investigation of Sulfridge for his possible theft of materials belonging to 84 Lumber. Because Sulfridge failed to show that Robinson's statements were made maliciously or recklessly, and consequently, that 84 Lumber lost its qualified privilege, the district court properly dismissed these claims.
 
 
 15
 The district court also properly dismissed the defamation claim relating to Hammrick. Under West Virginia law, it is well established that if a servant, agent or employee is acting within the scope of his employment, then his principal or employer may be held liable under the doctrine of respondeat superior. Musgrove v. Hickory Inn, Inc., 281 S.E.2d 499, 501 (W. Va. 1981); Cremeans v. Maynard, 246 S.E.2d 253 (W. Va. 1978); Griffith v. George Transfer & Rigging, Inc., 201 S.E.2d 281 (W. Va. 1973). The test for determining whether the principal is liable for the tortious act of his agent is whether the agent was acting within the scope of his authority and in furtherance of the principal's business. Laslo v. Griffith, 102 S.E.2d 894 (W. Va. 1958). "Scope of employment" is a relative term and requires a consideration of surrounding circumstances including the character of the employment, the nature of the wrongful deed, the time and place of the commission, and the purpose of the act. Griffith, 201 S.E.2d at 288. An act is within the scope of employment when the employee does that which is reasonably necessary to his employment. Id. at 287-88.
 
 
 16
 The disputed statement occurred during a casual conversation between Inman and Hammrick. Inman was purchasing building materials for a non-business project and had a long-standing personal friendship with Hammrick based on their prior business dealings.
 
 
 17
 All of the evidence before the district court was that Hammrick was not authorized or directed by anyone at 84 Lumber to speak to Inman or anyone else regarding Larry Sulfridge and that Hammrick, as a store manager, had no authority over any matter placed in his charge outside the operation of the Elkview store. Plaintiff offered no evidence to the contrary, and nothing is shown from which a contrary inference may be drawn. Sulfridge being the manager of a separate 84 Lumber store, the uncontradicted evidence establishes that Hammrick's comments about Sulfridge's relationship with 84 Lumber were not made within the scope of his employment.
 
 III
 
 18
 Summary judgment was also proper on Sulfridge's other claims. To maintain a cause of action for malicious prosecution in West Virginia a plaintiff must show that a prosecution detrimental to the plaintiff was caused or initiated by the defendant, that it was made without probable cause, it was made with malice, and that the proceedings terminated in favor of the plaintiff. Truman v. Fidelity & Casualty Co. of N.Y., 123 S.E.2d 59, 69 (W. Va. 1961). Probable cause is the knowledge of such a state of facts and circumstances as would excite the belief in a reasonable mind that the accused is guilty of the crime of which he is suspected. Burwell v. Virginia Acme Markets, Inc., 355 F.Supp. 784, 787 (S.D.W. Va. 1973).
 
 
 19
 The district court concluded that there was probable cause because of Sulfridge's own admissions, Dean's decision to conduct an investigation and report his findings to the prosecutor, and because the grand jury returned an indictment. Because the return of an indictment by an independent grand jury generally suggests that probable cause did exist, see Restatement (Second) of Torts,s 664(2) (1977), and Sulfridge has not presented any evidence to the contrary, the district court properly dismissed this claim.
 
 
 20
 Finally, we turn to the emotional distress claim. Although one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is liable for that injury, see Harless v. First National Bank, 289 S.E.2d 692, 704 (W. Va. 1982), the plaintiff must show that the defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and must be such that it is regarded as utterly intolerable in a civilized community. Id. at 705. The conduct Sulfridge complains of here does not come close to reaching the level required to recover for the tort of intentional infliction of emotional distress in West Virginia. Compare Cook v. Hech's, Inc., 342 S.E.2d 453, 455-56 (W. Va. 1986); Wayne County Bank v. Hodges, 338 S.E.2d 202, 205-06 (W. Va. 1985). Therefore, this claim was properly dismissed.
 
 IV
 
 21
 In conclusion, the district court's judgment is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 The district court dismissed Sulfridge's petty cash claim and 84 Lumber's counterclaim without prejudice because they did not reach the monetary threshold required for federal jurisdiction pursuant to 28 U.S.C. § 1332 (1988). 84 Lumber did not appeal this determination
 
 
 [2]
 84 Lumber maintained that these materials included an order of roof trusses, 4,700 square feet of redwood siding and 50 fiberglass shingles, along with numerous other items. 84 Lumber estimated the total value of the items not accounted for in the notebook to be $7,900
 
 
 [3]
 Rusen stated that she had not been contacted by anyone from 84 Lumber prior to seeking the indictment
 
 
 [4]
 Sulfridge has abandoned on appeal other defamation claims which he raised earlier
 
 
 [5]
 Despite Sulfridge's argument to the contrary, it does not appear that any of the communications made by either Robinson or Hammrick fall within the "insulting words statute" (W. Va. Codes 55-7-2). See Cunningham v. Martin, 294 S.E.2d 264, 266 (W. Va. 1982); Mauck v. City of Martinsburg, 280 S.E.2d 216, 219-21 (W. Va. 1981)