507 S.E.2d 136

Gladys Jeanette COURTLESS, Individually, and as Guardian and Next Friend of Bobbie Thomas Courtless, Appellant,

v.

David Clyde JOLLIFFE and Princess Beverly Coal Company, Appellees.

No. 24435.

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1998.

Decided July 15, 1998.

Charles M. Johnstone, II, Esq., Johnson W. Gabhart, Esq., Thaxton & Johnstone, Charleston, West Virginia Attorneys for Appellant.

Christopher P. Bastien, Esq., Tammy R. Harvey, Esq., Bastien & Martin, Charleston, West Virginia Attorneys for Princess Beverly Coal Company.

Francis M. Curnutte, Esq., R. Brandon Johnson, Esq., Dodrill, Brison & Curnutte, Charleston, West Virginia Attorneys for David Clyde Jolliffe.

PER CURIAM: [1]

Gladys Jeanette Courtless, individually and as guardian and next friend of Bobby Thomas Courtless (hereinafter "Appellant") appeals the Circuit Court of Kanawha County's stay of discovery and grant of summary judgment in favor of Appellee Princess Beverly Coal Company (hereinafter "Princess"). The Appellant contends that Princess was properly included in the Appellant's theory of liability through the doctrine of respondeat superior and that the lower court erred in dismissing Princess on summary judgment. We reverse and remand.

I. FACTS

On May 16, 1995, Bobby Courtless, while riding his bicycle, was struck by a vehicle driven by David Clyde Jolliffe. Bobby was rendered permanently disabled due to the injuries sustained in that accident and is now a paraplegic. Mr. Jolliffe was employed by Princess and was en route to work at the time of the accident. While traveling from his home to the Princess mine site, Mr. Jolliffe had stopped to buy shocks for his vehicle.

On August 31, 1995, the Appellants filed a civil action against both Mr. Jolliffe and Princess, alleging that Princess was liable under the doctrine of respondeat superior. Discovery was initiated, and it was confirmed that although Mr. Jolliffe owned the vehicle, Princess paid Mr. Jolliffe $400 monthly, the amount of the monthly payment on the truck. Princess also paid maintenance and repair costs on Mr. Jolliffe's truck, and Mr. Jolliffe had free use of gasoline from the Princess

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992).

gas tanks. In exchange, Mr. Jolliffe used the vehicle at the Princess sites on a daily basis.

On December 4, 1995, Princess filed a motion for summary judgment, alleging that Mr. Jolliffe was not acting within the scope of his employment at the time of the accident. On April 25, 1996, the lower court stayed additional discovery regarding Princess pending Mr. Jolliffe's deposition. On October 2, 1996, the lower court ruled as follows, by letter:

> This Court does not find that the deposition testimony and/or interrogatory responses support an exception to the "coming and going" rule. In other words, although Mr. Jolliffe stopped to get shock absorbers, which were ultimately paid for by his employer, and although he used his vehicle on the job, it is my finding that *no genuine* issue of material fact exists as to whether or not Mr. Jolliffe was acting in the scope of his employment at the time of this accident.

On November 12, 1996, the lower court entered summary judgment in favor of Princess, incorporating the October 2, 1996, letter by reference.

## II. ASSIGNMENTS

The Appellant appeals the judgment of the lower court, contending that the court erred in granting summary judgment where sufficient evidence existed to raise a jury question regarding whether Mr. Jolliffe was acting within the scope of his employment at the time of the accident. The Appellant further contends that the lower court erred in preventing additional discovery regarding Princess and that such action prevented the development of additional facts, such as the tax treatment of the vehicle, which could have potentially supported a finding of vicarious liability.[2]

We review this summary judgment issue under the standard of syllabus point one of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994), as follows: "A circuit court's entry of summary judgment is reviewed *de novo.*" We also remain cognizant of the fact that "[t]he question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined." Syl. Pt. 5, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). In syllabus point six of *Aetna,* we explained: "A party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment." Syl. Pt. 6, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). " ' "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).' Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992)." Syl. Pt. 1, *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995).

## III. RESPONDEAT SUPERIOR AND SCOPE OF EMPLOYMENT

The Appellants instituted their action against Princess under the doctrine of respondeat superior. As we have recognized, "[t]he fundamental rule in West Virginia is that if it can be shown that an individual is an agent and if he is acting within the

---

2. The Appellant maintains that the primary remaining issue of material fact, precluding summary judgment, is whether Mr. Jolliffe was acting within the scope of his employment at the time of the collision. The facts and circumstances necessary to arrive at a conclusion regarding that issue of material fact, the Appellant contends, have not yet been fully developed. Further, the Appellant argues that once those facts and circumstances are discovered, the weighing of that evidence is for the jury and is not a question properly resolved by the court. The outstanding issues for development, according to the Appellant, include the tax treatment of the vehicle; depositions of Mr. Jolliffe's supervisors regarding the company policy on issues relating to use of private vehicles for company purposes; compensation for wear and tear on personal vehicles used for company business; and whether Mr. Jolliffe's monthly truck allowance and the cost of gasoline, maintenance, and repairs were deducted as business expenses.

scope of his employment when he commits a tort, then the principal is liable for the tort as well as the agent." *Barath v. Performance Trucking Co., Inc.,* 188 W.Va. 367, 370, 424 S.E.2d 602, 605 (1992). As we stated in syllabus point three of *Musgrove v. Hickory Inn, Inc.,* 168 W.Va. 65, 281 S.E.2d 499 (1981):

> An agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship. Of course, if he is acting within the scope of his employment, then his principal or employer may also be held liable.

In *Griffith v. George Transfer & Rigging, Inc.* 157 W.Va. 316, 201 S.E.2d 281 (1973), we explained:

> The universally recognized rule is that an employer is liable to a third person for any injury to his person or property which results proximately from tortious conduct of an employee acting within the scope of his employment. The negligent or tortious act may be imputed to the employer if the act of the employee was done in accordance with the expressed or implied authority of the employer.

157 W.Va. at 324–25, 201 S.E.2d at 287. In *Griffith,* we discussed this Court's judgment in *Cochran v. Michaels,* 110 W.Va. 127, 157 S.E. 173 (1931), and noted the following language from Mechem on Agency, Second Edition, 1879:

> [A] servant is acting within the course of his employment when he is engaged in doing, for his master, either the act consciously and specifically directed or any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act or a natural, direct and logical result of it. If in doing such an act, the servant acts negligently, that is negligence within the course of the employment.

In *Cochran,* this Court emphasized the need to examine the relation which the act bears to the employment and, in the syllabus, explained that "[a]n act specifically or impliedly directed by the master, or any conduct which is an ordinary and natural incident or result of that act, is within the scope of the employment."

As we noted in *Griffith,* " '[s]cope of employment' is a relative term and requires a consideration of surrounding circumstances including the character of the employment, the nature of the wrongful deed, the time and place of its commission and the purpose of the act." 157 W.Va. at 326, 201 S.E.2d at 288. In *Barath,* for instance, we reversed the lower court's summary judgment determination and remanded for the accumulation of additional facts where the victim of a beating brought an action against the tortfeasor's father's trucking company. 188 W.Va. at 371, 424 S.E.2d at 606. We found that the evidence raised a genuine issue of material facts regarding whether the tortfeasor was acting within the scope of his employment when he committed the battery and explained as follows:

> While the evidence on this point was exceedingly indirect, this Court believes that it did suggest that union unrest might have caused financial losses to Performance Trucking Co., Inc., that David Cook, Sr., as manager of the company, was aware of and felt the losses and had developed animosity toward the appellant, and as a consequence had directed his son to "beat" the appellant. Overall, it is suggested, but certainly not proven, that David Cook, Jr., who might have been an employee of Performance Trucking Co., Inc., at the time of the battery in this case, might have been acting within the scope of his employment at the time of the battery.
>
> . . .
>
> As previously stated, this Court has held that summary judgment should be granted only when inquiry concerning the facts is not desirable to clarify the application of the law. In this case, the facts were not sufficiently developed for the Court to determine what the situation was. Accordingly, this Court believes that the summary judgment entered by the circuit court should be set aside, and this case should be remanded for additional development.

*Id.*

In the syllabus of *Cremeans v. Maynard,* 162 W.Va. 74, 246 S.E.2d 253 (1978),

we stated that " '[w]hen the evidence is conflicting the questions of whether the relation of principal and agent existed and, if so, whether the agent acted within the scope of his authority and in behalf of his principal are questions for the jury.' Syl. pt. 2, *Laslo v. Griffith,* 143 W.Va. 469, 102 S.E.2d 894 (1958)."

## IV.  GOING AND COMING RULE AND SPECIAL ERRAND EXCEPTION

In the case sub judice, Princess contends that the lower court was accurate in basing its determination upon the "going and coming rule," which essentially declares that the doctrine of respondeat superior is not typically applicable while the employee is coming or going to work.  The "going and coming rule" has its foundations in workers compensation law[3] and is articulated as follows in syllabus point two of *De Constantin v. Public Service Commission,* 75 W.Va. 32, 83 S.E. 88 (1914):

> An injury incurred by a workman, in the course of his travel to his place of work and not on the premises of the employer, does not give right to participation in such (Workmen's Compensation) fund, unless the place of injury was brought within the scope of employment by an express or implied requirement in the contract of employment, of its use by the servant in going to and returning from his work.

As the Appellants emphasize, however, the "going and coming rule" traditionally applies where the only evidence linking the employer to the accident was the fact that the employee was coming or going to work.  Various nuances of the rule may serve to alter its application where additional evidence exists linking the employer to the accident.  For instance, in *Harris v. State Workmen's Compensation Commissioner,* 158 W.Va. 66, 208 S.E.2d 291 (1974), we noted the general rule that injuries incurred through the ordinary use of streets and highways while going or coming to work are not considered within the scope of employment " '[u]nless such use is required of the employee in the performance of his duties for the employer.' "  158 W.Va. at 70, 208 S.E.2d at 293, quoting *Buckland v. State Compensation Commissioner,* 115 W.Va. 323, 326, 175 S.E. 785, 787 (1934).  That exception was designated as the "special errand" exception to the "going and coming rule" and was held inapplicable in *Harris* due to the absence of any requirement that the employee return home to retrieve tools while en route between job sites. *Id.*

Professor Larson, in Larson's Workmen's Compensation Law, addresses the special errand rule, as follows:

> When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

1 Larson's Workmen's Compensation Law s 16.10 (1972).

In *Standley v. Johnson,* 276 So.2d 77 (Fl. App.1973), a case addressing the "going and coming" rule within the context of a respondeat superior claim, an employee had traveled to a drugstore to purchase medicine for his wife on his way to work.  276 So.2d at 78.

After getting the medicine, he went to a gas station across the street from the

---

3.  Commentators have cautioned against unbridled application of the same "going and coming" principles to workers compensation cases and tort matters.  "Workers' compensation law takes a different approach to exceptions to the going-and-coming rule.... [W]orkers' compensation cases are not controlling with respect to exceptions to the going-and-coming rule in cases involving respondeat superior....  Workers' compensation and respondeat superior law are driven in opposite directions based on differing policy considerations.  Workers' compensation has been defined as a type of social insurance designed to protect employees from occupational hazards, while respondeat superior imputes liability to an employer based on an employee's fault because of the special relationship....  Further, courts heed statutory admonitions for a liberal construction favoring coverage in workers' compensation cases which are not present in respondeat superior law." *Blackman v. Great American First Savings Bank,* 233 Cal.App.3d 598, 604–605, 284 Cal.Rptr. 491 (1991) (citations omitted).

drugstore and purchased a gallon can of gas for use in the lawn mower at the nursery. Johnson then dropped the medicine off at his home and proceeded to work, stopping at another service station to purchase gas for his truck. As Johnson pulled out of this second service station, he turned into the oncoming traffic, striking Mrs. Standley's car. Part of Johnson's work at the nursery was keeping the lawn mower filled with gas and his truck was used in his work for hauling dirt and fertilizer. At the time of the accident, Johnson also had some of Mr. White's tools in his truck which he had carried home that weekend.

*Id.*

The plaintiff in *Standley* maintained that the lower court erred in "determining as a matter of law that no material issue of fact exists as to whether employee Johnson was within the scope of his employment at the time the accident occurred, thereby rendering employer White vicariously liable for Johnson's negligence," and the court in *Standley* agreed. *Id.* The *Standley* court reasoned as follows:

> It is the well recognized rule that an employee driving to or from work is not within the scope of employment so as to impose liability on the employer. This is true even though the car driven by the employee is used in his work and partly maintained by the employer, *Foremost Dairies, Inc. of the South v. Godwin,* 158 Fla. 245, 26 So.2d 773 (1946).
>
> However, in the case at bar, Johnson was doing more than merely driving to work. He adduced evidence that he had been instructed to keep the lawn mower filled with gas and was in fact transporting gas to the nursery as part of his job and for the benefit of his employer.

*Id.*

In *Skinner v. Braum's Ice Cream Store,* 890 P.2d 922 (Okl.App.1995), the Oklahoma Supreme Court acknowledged exceptions to the "going and coming rule." "Liability is imposed upon the employer if the employee is rendering a service, either express or implied, to the employer with his/her consent. An exception also exists if the trip involves an incidental benefit to the employer not common to ordinary commuting trips of the work force." *Id.* at 924.

The issue on the motion for summary judgment in the present case concerned the presence or absence of a genuine issue of material fact regarding whether Mr. Jolliffe was acting within the scope of his employment at the time of the collision that caused Bobbie Courtless' injuries. That inquiry necessarily involved a determination of the scope of employment, leading to evaluation of the coming and going rule and its application to the facts of this case. To develop a complete and exhaustive determination of that application, all facts surrounding Princess' connection to the truck involved in the accident and the purposes for the travel undertaken by Mr. Jolliffe on the day of the accident must be discovered. The granting of summary judgment prematurely discontinued that gathering process.

We have not previously had occasion to wander extensively through the vicissitudes of the "going and coming rule," nor to delineate whether the rule as it has been interpreted in the workers compensations context is equally applicable to the tort context. Without a more complete factual record, we decline to render any judgments on these issues at this juncture. As we explained in syllabus point three of *Fayette County National Bank v. Lilly,* 199 W.Va. 349, 484 S.E.2d 232 (1997), "[a]lthough our standard of review for summary judgment remains de novo, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed." While the lower court's order included a finding regarding the perceived absence of a genuine issue of material fact as to whether Mr. Jolliffe was acting within the scope of his employment, we conclude that additional discovery regarding potential application of the "going and coming" rule within the scope of employment and respondeat superior should have been permitted prior to a determination on the motion for summary judgment. Particularly

where this Court may be compelled to render judgment on an evolving area of law in this state, complete development of an underlying factual record must be undertaken. Further proceedings will improve upon the record, facilitating appropriate resolution and clarification of this area of law which potentially affects significant employer/employee issues. In *Atchison, Topeka & Santa Fe Railway Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), wherein summary judgment had been granted for the employer, the United States Supreme Court determined that the record was insufficient to determine whether particular damages were available. *Id.* at 567, 107 S.Ct. 1410. The Court, recognizing the necessity for complete factual development prior to pronouncements of legal principles, explained:

> [The issue to be decided] is not necessarily an abstract point of law or a pure question of statutory construction that might be answerable without exacting scrutiny of the facts of the case.... [and] might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity.... In short, the question ... may not be susceptible to an all-inclusive "yes" or "no" answer. As in other areas of law, broad pronouncements in this area may have to bow to the precise application of developing legal principles to the particular facts at hand.

*Buell*, 480 U.S. at 568–70, 107 S.Ct. 1410.

Resolving any doubt as to the existence of a genuine issue of material fact against Princess as the movant for summary judgment, we find that the lower court erred in granting summary judgment and we remand for further proceedings. In so doing, we express no opinion regarding the appropriate ultimate resolution of this matter. We find only that a genuine issue of material fact exists and inquiry concerning the facts is desirable to clarify the application of the law.

Reversed and remanded.