IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

**FILED**

**June 9, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 21-0905

WEST VIRGINIA DIVISION OF CORRECTIONS & REHABILITATION,
Defendant Below, Respondent,

v.

DAMEIN ROBBINS,
Plaintiff Below, Respondent.

No. 21-0906

ISAIAH BLANCARTE & BRYON WHETZEL,
Defendants Below, Petitioners,

v.

DAMEIN ROBBINS,
Plaintiff Below, Respondent.

Appeals from the Circuit Court of Hampshire County
The Honorable C. Carter Williams, Judge
Case No. 20-C-24

AFFIRMED IN PART, REVERSED IN PART, REMANDED

Submitted: January 31, 2023
Filed: June 9, 2023

Matthew R. Whitler, Esq.
*PULLING, FOWLER, FLANAGAN,*
*BROWN & POE, PLLC*
Martinsburg, West Virginia
Counsel for Petitioner
West Virginia Department of Corrections
& Rehabilitation

Michael D. Dunham, Esq.
Kathryn V. McCann Slaughter, Esq.
Shuman McCuskey Slicer PLLC
Winchester, Virginia
Counsel for Petitioners
Isaiah Blancarte & Bryon Whetzel

J. Daniel Kirkland, Esq.
Gregory A. Bailey, Esq.
Arnold & Bailey, PLLC
Charles Town, West Virginia
Counsel for Respondent
Damein Robbins

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ARMSTEAD concurs in part and dissents in part and reserves the right to file a separate opinion.

JUSTICE BUNN concurs in part and dissents in part reserves the right to file a separate opinion.

## SYLLABUS BY THE COURT

1.      "A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the "collateral order" doctrine."  Syllabus Point 1, *West Virginia Board of Education. v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015).

2.      "'When a party . . . assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*.' Syllabus point 4, in part, *Ewing v. Board of Education of County of Summers*, 202 W. Va. 228, 503 S.E.2d 541 (1998)."  Syllabus Point 4, *West Virginia State Police, Department of Military Affairs & Public Safety v. J.H. by & through L.D.*, 244 W. Va. 720, 856 S.E.2d 679 (2021).

3.      "'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.', *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)."  Syllabus Point 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).

4.      "If the plaintiff identifies a clearly established right or law which has been violated by the acts or omissions of the State, its agencies, officials, or employees, or can otherwise identify fraudulent, malicious, or oppressive acts committed by such official

i

or employee, the court must determine whether such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment. To the extent that such official or employee is determined to have been acting outside of the scope of his duties, authority, and/or employment, the State and/or its agencies are immune from vicarious liability, but the public employee or official is not entitled to immunity in accordance with *State v. Chase Securities, Inc.,* 188 W.Va. 356, 424 S.E.2d 591 (1992) and its progeny. If the public official or employee was acting within the scope of his duties, authority, and/or employment, the State and/or its agencies may be held liable for such acts or omissions under the doctrine of *respondeat superior* along with the public official or employee."  Syllabus Point 12, *West Virginia Regional Jail & Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

5.     "'An act specifically or impliedly directed by the master, or any conduct which is an ordinary and natural incident or result of that act, is within the scope of the employment.' Syllabus, *Cochran v. Michaels,* 110 W.Va. 127, 157 S.E. 173 (1931)." Syllabus Point 6, *Courtless v. Jolliffe*, 203 W. Va. 258, 507 S.E.2d 136 (1998).

WALKER, Chief Justice:

Respondent Damein Robbins spent forty-eight hours in the Potomac Highlands Regional Jail in Augusta, West Virginia, in July 2018. He alleges that during that time, fellow inmates sexually assaulted him, sodomized him, forced him to eat feces and drink urine, threatened to kill him, and—during the assault—paraded him through a housing pod in full view of at least one corrections officer. Robbins sued corrections officers Bryon Whetzel and Isaiah Blancarte (the Officers) and West Virginia Division of Corrections and Rehabilitation (DOC) to recover for the injuries he claims to have incurred during those forty-eight hours, punitive damages, and attorneys' fees. The Officers and DOC claimed qualified immunity from Robbins's claims and moved to dismiss the complaint. The circuit court denied those motions, and Petitioners now appeal that ruling via the collateral order doctrine.

We affirm in part and reverse in part the circuit court's order. First, we affirm that part of the order denying the Officers' motion to dismiss. Second, we reverse that part of the order denying DOC's motion to dismiss Robbins's negligent training and supervision claim. Third, as to that part of the order denying DOC's motion to dismiss Robbins's vicarious liability claim, we affirm.

1

# I. FACTUAL AND PROCEDURAL HISTORY

Robbins was committed to the Potomac Highlands Regional Jail on July 20, 2018, for forty-eight hours. Robbins claims that within earshot of other inmates, an unnamed correctional officer elicited from Robbins that he was a sex offender, violating the Prison Rape Elimination Act (PREA).[1] According to Robbins, this substantially increased the possibility that other inmates would harm him. Robbins asserts that other inmates in the misdemeanor pod threatened him, so he asked to be transferred. Robbins claims that jail officials moved him to an interview room, then to felony pod A-6, a segregated housing unit. Robbins alleges that he was told that he would not be allowed out of his cell, nor would other inmates be allowed in it.

Robbins claims that early in the morning of July 22, 2018, Officer Byron Whetzel permitted three inmate-occupants of felony pod A-6 to enter Robbins's cell. The inmates closed the cell door behind them, covered the cell door window and the exterior window with paper, then turned off the lights. According to Robbins, the inmates then began to sexually assault him. Robbins claims that he was (1) sodomized with a broom handle; (2) forced to drink urine; (3) forced to eat feces; (3) threatened with a "makeshift weapon," which the assailants also used to cut off his hair; (4) told "this is what happens to sex offenders;" (5) paraded by his assailants throughout felony pod A-6 to "'show off'" his condition and humiliate him; and (6) threatened with death should he tell anyone of the

---

[1] 42 U.S.C. §§ 15601 *et seq.* (2003).

assault. Robbins claims that Whetzel saw him being "show[n] off" but did not intervene. Robbins alleges that Officer Isaiah Blancarte was the "rover" in felony pod A-6 during the assault, and that he and Whetzel permitted inmates to roam around the pod together and enter his cell.[2]

Robbins was processed out of the jail late in the afternoon of July 22, 2018. He said nothing when other corrections officers inquired about his injuries, he alleges, because his assailants threatened to kill him should he report the assault. Robbins's wife collected him from the jail then took him to the hospital in Romney, West Virginia. Hours later, Robbins was transferred to a trauma ward at Winchester Medical Center. Robbins alleges that he was hospitalized until July 25, 2018. He claims that his ribs were broken and his orbital bone shattered in the assault.[3]

In July 2020, Robbins sued two "John Doe" corrections officers and the DOC.[4] He asserted three claims against the John Does: (Count I) 42 U.S.C. § 1983 claim predicated on the alleged violation of his rights under the Eighth Amendment to the United

---

[2] Robbins claims that the three inmates who assaulted him pled guilty to related criminal charges in the Circuit Court of Hardy County. He also asserts that DOC fired Whetzel after investigating the assault.

[3] Robbins alleges that he filed a complaint and report with the jail.

[4] Robbins also sued three DOC officials. He later dismissed all claims against those officials, voluntarily. Robbins also voluntarily dismissed his punitive damages claim against DOC.

States Constitution (deliberate indifference); (Count II) failure to protect;[5] and (Count III) negligent infliction of emotional distress. He brought two claims against DOC: (Count IV) failure to train and adequately supervise and (Count V[6]) vicarious liability for the violation of his clearly established rights under the Eighth Amendment to the United States Constitution and its counterpart in the West Virginia Constitution, as well as the "fraudulent, malicious, or oppressive" acts of John Doe I and II. Finally, Robbins sought attorneys' fees under 42 U.S.C. § 1988 (Count VI). Robbins amended his complaint in October 2020, dropped the John Doe monikers, and named Blancarte and Whetzel as defendants in their personal and official capacities.

In December 2020, Blancarte and Whetzel filed motions under West Virginia Rule of Civil Procedure 12(b)(6) to dismiss Robbins's claims, arguing qualified immunity. DOC moved to dismiss Robbins's claims against it the next month. DOC asserted that it was qualifiedly immune from Robbins's failure-to-train-and-adequately-supervise claim and his claim for vicarious liability. DOC also argued that Robbins could not collect attorneys' fees from it under 42 U.S.C. § 1988.

---

[5] Robbins alleged this claim against John Doe II, only.

[6] Robbins misnumbered this count—the fifth in the amended complaint—as Count IV. For clarity's sake, we refer to it as "Count V" in the remainder of the opinion.

4

The circuit court denied the motions to dismiss in October 2021.[7] The court found that Robbins had been in the care and custody of DOC at relevant times, and that Blancarte and Whetzel acted under the color of law as corrections officers employed by the DOC. The court went on to find that the alleged acts and omissions of Blancarte, Whetzel, and DOC were discretionary. Next, the court found that Robbins had identified a clearly-established constitutional right—freedom from cruel and unusual punishment, guaranteed under the Eighth Amendment to the United States Constitution. The court expressly found that, "with regard to the heightened pleading requirement stated above (and asserted by the Defendants as a basis for dismissing Plaintiff's claims), that the Plaintiff has alleged in the Amended Complaint sufficient 'particularized' facts to satisfy such requirement on the matter of a clearly established right in this instance and at this stage of the proceedings."[8]

---

[7] Judge C. Carter Williams initially presided over this matter. The case was transferred and reassigned to Judge H. Charles Carl, III, in October 2021.

[8] Earlier in the order, the circuit court found that, "the aforesaid, specific allegations concerning the conduct of [the Officers] with regard to [Robbins] constitute, as pled, a violation of [Robbins's] Eighth Amendment rights." The court went on to cite footnote 11 of *Hutchison v. City of Huntington*, 198 W. Va. 139, 149 n.11, 479 S.E.2d 649, 659 n.11 (1996), where we stated,

> The threshold inquiry is, assuming that the plaintiff's assertions of facts are true, whether any allegedly violated right was clearly established. To prove that a clearly established right has been infringed upon, a plaintiff must do more than allege that an abstract right has been violated. Instead, the plaintiff must make a "particularized showing" that a

(continued . . .)

The court also denied DOC's motion to dismiss Robbins's vicarious liability claim. The court recognized that DOC cannot be held vicariously liable for its employees' alleged violations of Robbins's Eighth Amendment rights under 42 U.S.C. § 1983. Still, the court concluded that, if taken as true, the allegations in the amended complaint demonstrated that the Officers' acts or omissions had occurred within the scope of their employment with DOC so that dismissal of the vicarious liability claim was inappropriate under Rule 12(b)(6).[9]

> "reasonable official would understand that what he is doing violated that right" or that "in the light of preexisting law the unlawfulness" of the action was "apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Indeed, some courts hold that an "official may not be charged with knowledge that his or her conduct was unlawful unless it has been previously identified as such." *Warner v. Graham,* 845 F.2d 179, 182 (8th Cir.1988). But, for a right to be clearly established, it is not necessary that the very actions in question previously have been held unlawful. *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. at 3039. To define the law in question too narrowly would be to allow defendants "to define away all potential claims." *Kelley v. Borg,* 60 F.3d 664, 667 (9th Cir.1995).

[9] The circuit court concluded that Petitioners had formed a "special relationship" to Robbins, overcoming the "public duty doctrine" defense. Petitioners correctly do not challenge this conclusion on this appeal. As we have explained,

> Qualified immunity is, quite simply, immunity from suit. The public duty doctrine is a defense to negligence-based liability, i.e. an absence of duty. . . . Although both defenses are frequently raised, as in this case, only qualified immunity, if disposed of by way of summary judgment, is subject to interlocutory appeal.

(continued . . .)

## II. STANDARD OF REVIEW

Rule 8 of the West Virginia Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Negligence may be averred generally, as may "[m]alice, intent, knowledge, and other condition of mind of a person."[10] Courts are to construe "[a]ll pleadings . . . as to do substantial justice."[11] Even so, Rules 8 and 9(b) do not countenance sloppy pleading; "a plaintiff may not fumble around searching for a meritorious claim within the elastic boundaries of a barebones complaint."[12] Instead, they require that "[e]ach averment of a pleading . . . be simple, concise, and direct,"[13] so that "a circuit court or an opposing party [may] understand whether a valid claim is alleged and, if so, what it is."[14] In other words, a complaint "must

---

*W. Va. Dep't of Health & Hum. Res. v. Payne*, 231 W. Va. 563, 569 n.10, 746 S.E.2d 554, 560 n.10 (2013).

[10] W. Va. R. Civ. P. 9(b).

[11] *Id*. at 8(f).

[12] *Judy v. E. W. Va. Cmty. & Tech. Coll.*, 246 W. Va. 483, 487, 874 S.E.2d 285, 289 (2022) (internal quotations omitted).

[13] W. Va. R. Civ. P. 8(e)(1).

[14] *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 776, 461 S.E.2d 516, 522 (1995).

set forth enough information to outline the elements of a claim or permit inferences to be drawn that these elements exist."[15]

Petitioners appeal from the circuit court's denial of their motions to dismiss on the grounds that they are qualifiedly immune from Robbins's claims. "A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine."[16] "'When a party . . . assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*.'"[17] *De novo* means that this Court "'give[s] a new, complete and unqualified review to the parties' arguments and the record before the circuit court'"[18] under the same standard employed by the circuit court: "'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff

---

[15] *Fass v. Nowsco Well Serv. Ltd.*, 177 W. Va. 50, 52, 350 S.E.2d 562, 563 (1986) (citations omitted).

[16] Syl. Pt. 1, *W. Va. Bd. of Educ. v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015).

[17] Syl. Pt. 4, *W. Va. State Police, Dep't of Mil. Affs. & Pub. Safety v. J.H. by & through L.D.*, 244 W. Va. 720, 856 S.E.2d 679, 683 (2021) (quoting Syl. Pt. 4, in part, *Ewing v. Bd. of Ed. of Cnty. of Summers*, 202 W. Va. 228, 503 S.E.2d 541 (1998)).

[18] *Doe v. Logan Cnty. Bd. of Ed.*, 242 W. Va. 45, 48, 829 S.E.2d 45, 48 (2019) (quoting *Gastar Exploration Inc. v. Rine*, 239 W. Va. 792, 798, 806 S.E.2d 448, 454 (2017)).

can prove no set of facts in support of his claim which would entitle him to relief.'"[19] And, like the circuit court, we must construe the amended complaint and the factual allegations in it in the light most favorable to Robbins.[20]

Under West Virginia law, immunities "are more than a defense to a suit in that they grant governmental bodies and public officials the right not to be subject to the burden of trial at all."[21] A State agency or public official is denied that right irrevocably if required to try a claim from which the agency or official is immune; "[t]he very heart of the immunity defense is that it spares the defendant from having to go forward with an inquiry into the merits of the case."[22] Due to that strong public policy, we have advised that "[p]ublic officials . . . . should be entitled to qualified immunity from suit . . . unless it is shown by specific allegations that the immunity does not apply."[23] But where "the

---

[19] Syl. Pt. 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) (quoting *Conley v. Gibson*, 355 U.S. 41, 45−46 (1957)).

[20] *Chapman*, 160 W. Va. at 538, 236 S.E.2d at 212; *Murphy v. Smallridge*, 196 W. Va. 35, 36, 468 S.E.2d 167, 168 (1996) (in conducting *de novo* review of ruling on 12(b)(6) motion, Court "constru[es] the factual allegations in the light most favorable to the plaintiffs") (citations omitted).

[21] *Hutchison*, 198 W. Va. at 148, 479 S.E.2d at 658.

[22] *Id*.

[23] *Id*. at 147−48, 479 S.E.2d at 657−58.

information contained in the pleadings is sufficient to justify the case proceeding further, the early motion to dismiss should be denied."[24]

### III. ANALYSIS

We first address the Officers' assignments of error, then examine those assigned by DOC to the circuit court's order. As we embark, we emphasize that these Petitioners are before this Court on an appeal of an interlocutory order under the collateral order doctrine. The corollary of that extraordinary procedural posture is that our review is limited to matters of qualified immunity. We express no view on the merits of Robbins's claims and underscore that this litigation is yet in early days.

### A. The Officers

The Officers assign two errors to the circuit court's order denying their motion to dismiss predicated on qualified immunity. Those errors relate to one portion of the qualified immunity test (violation of a clearly established right), so we briefly survey pertinent immunities law before addressing the Officers' specific arguments.

Qualified immunity is an immunity from suit afforded to public officials and State agencies under certain conditions.[25] It flows not from constitutional, sovereign

---

[24] *Id*. at 150, 479 S.E.2d at 660.

[25]*Cf.* Syl. Pt. 10, in part, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751, 756 (2014) ("To the extent that the cause of action arises from (continued . . .)

immunity but is a judge-made doctrine intended "to allow officials to do their jobs and to exercise judgment, wisdom, and sense without worry of being sued."[26] A public official or State agency may claim to be qualifiedly immune from suit only when "the acts or omissions which give rise to the suit . . . involve . . . discretionary governmental functions."[27] If they do, then the public official or State agency is entitled to qualified immunity *unless* "the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known . . . ."[28]

---

judicial, legislative, executive or administrative policy-making acts or omissions, both the State and the official involved are absolutely immune pursuant to Syl. Pt. 7 of *Parkulo v. W. Va. Bd. of Probation and Parole*, 199 W.Va. 161, 483 S.E.2d 507 (1996)."); *see* Syl. Pt. 6, *Clark v. Dunn*, 195 W. Va. 272, 274, 465 S.E.2d 374, 376 (1995) ("In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va.Code § 29–12A–1, *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.").

[26] *Marple*, 236 W. Va. at 661, 783 S.E.2d at 82; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) ("Finally, there is the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible public officials, in the unflinching discharge of their duties.") (internal quotation and alteration omitted).

[27] Syl. Pt. 10, in part, *A.B.*, 234 W. Va. at 492, 766 S.E.2d at 751 (citing Syl. Pt. 7, *Parkulo,* 199 W. Va. at 161, 483 S.E.2d at 507).

[28] Syl. Pt. 11, in part, *A.B.*, 234 W. Va. at 492, 766 S.E.2d at 751. Additionally, under West Virginia immunities law, qualified immunity does not shield a public official from suit whose acts are "fraudulent, malicious, or otherwise oppressive." Syl. Pt., in part, *State v. Chase Sec., Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992).

11

West Virginia's qualified immunity jurisprudence mirrors federal law.[29] As we recently detailed,

> [i]n *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court of the United States addressed qualified immunity, holding that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* 818, 102 S.Ct. 2727. The Supreme Court has crafted a two-part test for courts to apply in ruling on a qualified immunity issue. The first inquiry is, when "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If answered in the affirmative, then the second inquiry is "whether the right was clearly established[?]"[30]

We return to the Officers' assignments of error that (1) "[t]he circuit court erred when it failed to identify and evaluate facts that demonstrate Officer Blancarte and Officer Whetzel violated the Eighth Amendment's prohibition against cruel and unusual

---

[29] *See id.* at 365, 424 S.E.2d at 600 (stating that West Virginia's "immunity test is designed to parallel the Supreme Court's standard of qualified immunity for public officials in Section 1983 actions because in such actions we cannot extend a broader immunity"); *see also City of Saint Albans v. Botkins*, 228 W. Va. 393, 398, 719 S.E.2d 863, 868 (2011) ("Our approach to matters concerning immunity historically has followed federal law . . . .").

[30] *Ballard v. Delgado*, 241 W. Va. 495, 504, 826 S.E.2d 620, 629 (2019) (quoting *Saucier v. Katz*, 533 U.S. 194 (2001)). We explained in *Delgado* that "the Supreme Court receded from the order of this two-part analysis in *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Trial courts now have the discretion regarding the order in which these two inquiries are considered." *Id.* at 504 n.21, 629 n.21.

12

punishment," and (2) "[t]he circuit court erred by finding that [they] are not entitled to qualified immunity." Robbins responds that the circuit court correctly concluded that the amended complaint contains factual allegations demonstrating that the Officers violated his Eighth Amendment right to freedom from cruel and unusual punishment, and that the court correctly refused to dismiss the amended complaint on the grounds of qualified immunity.

"'[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'"[31] "In its prohibition of 'cruel and unusual punishments,'" the Eighth Amendment "imposes duties on [prison] officials," including the particular "'duty to protect prisoners from violence at the hands of other prisoners.'"[32] There are limits to this duty of protection, though; "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."[33] Instead, an inmate may establish that a prison official violated the inmate's Eighth Amendment rights by failing in his duty of protection if the inmate demonstrates that (1) he was "incarcerated under conditions posing a substantial risk of serious harm," an objective

---

[31] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)).

[32] *Id.* at 832−33 (quoting *Cortes-Quinones v. Jiminez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1998)).

[33] *Id*. at 834.

13

component; and (2) the allegedly culpable prison official had a "sufficiently culpable state of mind,"[34] a subjective component. An inmate satisfies the latter, subjective component by showing that a prison official acted (or failed to act) with the mental state of "deliberate indifference."[35] That state of mind "entails something more than mere negligence," but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."[36] "Basically, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[37] That said, "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."[38]

Blancarte and Whetzel concede that Robbins has alleged sufficient facts to establish the objective component of an Eighth Amendment violation. The subjective component is a different story, they contend, because Robbins hasn't alleged that they (1)

---

[34] *Id.* (internal quotation omitted).

[35] *Id.* (internal quotation omitted).

[36] *Id.* at 835.

[37] *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Farmer*, 511 U.S. at 837).

[38] *Farmer*, 511 U.S. at 842.

14

placed him in the A6 pod or knew why other officials put him there, (2) knew that putting him in an unsecured cell, allowing other inmates housed in the A6 pod to enter, or allowing those inmates to move freely around the pod created a substantial risk of harm to Robbins, or (3) witnessed inmates assault Robbins. Without those express allegations, Whetzel and Blancarte conclude, Robbins has "fail[ed] to allege facts that plausibly suggest that [they] knew of and disregarded a substantial risk of serious harm to [him] by allowing inmates to roam around in the A-6 lockdown pod . . . ." Robbins responds that his complaint contains clearly articulated allegations from which inferences may be drawn that the Officers acted (or failed to act) with sufficiently culpable states of mind during the alleged assault.

We reject Whetzel and Blancarte's take on the allegations in Robbins's complaint and their refusal to acknowledge the inferences that those allegations support when the amended complaint is construed in Robbins's favor. Robbins alleges that it was known among the inmate population that he was a sex offender, inmates in the misdemeanor pod threatened to harm him due to that status, and inmates in the A-6 pod assaulted him due to that status.[39] Robbins alleges that officials acquiesced to his request to transfer out of the misdemeanor pod and moved him to the A-6 pod where he was to be kept from other inmates. Those allegations permit the inferences that prison officials knew

_____

[39] Robbins alleges that the three inmates who assaulted him told him that "'this is what happens to sex offenders.'" That allegation supports the inference that inmates on the A-6 pod assaulted Robbins due to his sex-offender status.

15

that Robbins's safety was under threat due to his sex offender status and considered the danger posed by those threats substantial enough to secure Robbins from other inmates.

As to Whetzel, Robbins alleges that he was on duty in the A-6 pod as the Tower Officer before and during the assault. At the pleadings stage, we infer from that allegation that Whetzel (a prison official) would have known why other prison officials had placed Robbins in the A-6 pod and why Robbins's cell door was to remain locked—to protect him from other inmates. Nevertheless, Robbins alleges, Whetzel permitted inmates to enter his cell.

Barring that, Robbins alleges that "[d]uring the assault," he was "paraded around the pod to other cells for the purpose of humiliating him and to 'show off' what was done to him," and that Whetzel saw this. The first allegation permits this key inference: that Robbins's injuries were obvious while the assault continued.[40] Otherwise, how could they be "shown off" to other inmates during the assault? And there is no inference needed to see the import of that second allegation: that Whetzel saw the parade and Robbins's obvious injuries on display. Nevertheless, Robbins alleges, Whetzel did not intervene.

---

[40] This inference is bolstered by Robbins's allegation that jail officials inquired about his injuries while he was processing out of the jail. Accepting that allegation as true, the inference arises that Robbins's injuries were obvious.

16

Blancarte presents a closer call, but Robbins's factual allegations are sufficient to state a claim against him, too. First, Robbins alleges that Blancarte was officially assigned to work on the A-6 pod at the time of the assault. At the pleadings stage, that factual allegation permits the inference that Blancarte, too, would have known why other prison officials had placed Robbins on the A-6 pod: to secure him from other inmates. Second, as discussed above, Robbins's allegations permit the inference that he was moved around the A-6 pod by other inmates while visibly injured during the hours-long assault, and not merely at its completion. So, the allegations in the complaint permit the inference that the substantial threat posed to Robbins by other inmates was obvious to those on the A-6 pod, and in real-time. Robbins alleges that Blancarte was the assigned "rover" on the A-6 pod during the assault, the inference being that Blancarte roved the pod while inmates' control over Robbins and his injuries were obvious—not hidden behind a cell door. Yet, Robbins alleges, Blancarte permitted inmates to roam the A-6 pod freely and enter Robbins's cell.

In *Farmer v. Brennan*, the Supreme Court of the United States explained that in the context of claims like Robbins's, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and *a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was*

17

*obvious*."[41]  Although the Supreme Court analyzed an order granting summary judgment to state officials in *Farmer*, the Court's observation is apt in the 12(b)(6) context, too.[42] When accepted as true and construed in the light most favorable to Robbins, the factual allegations in the amended complaint are sufficient to state a violation of Robbins's Eighth Amendment rights.

The Officers argue that the circuit court failed to explain its finding that Robbins has adequately pled a violation of his Eighth Amendment rights in view of our discussion in *Hutchison v. City of Huntington*.  True, the order lacks extensive analysis of the subjective knowledge element of an Eighth Amendment violation, but the order is markedly better than the order rejected by this Court in *P.T.P., IV by P.T.P., III v. Board of Education of the County of Jefferson*,[43] a case cited by the Officers.  There, we found insufficient for appellate review a dismissal order "stating only that [defendants'] motion [to dismiss] was granted" where the order "included no findings of facts, conclusions of

---

[41] *Id*. at 842 (emphasis added).

[42] *See, e.g.*, *Q.F. v. Daniel*, 768 F. App'x 935, 946 (11th Cir. 2019) (no error in denying dismissal of inmate's failure-to-protect claim where "complaint . . . allege[d] sufficient facts to show that the risk of inmate-on-inmate violence at" juvenile facility was obvious); *Amick v. Ohio Dep't of Rehab. & Corr.*, 521 F. App'x 354, 362 (6th Cir. 2013) (district court erred by dismissing § 1983, failure-to-protect claim based on absence of allegation that prison official knew why inmate was to be placed in a single cell when "complaint sufficiently allege[d] facts from which a reasonable factfinder could conclude, from the obviousness of the danger posed by double-celling [inmate-plaintiff], that [prison official] knew he was exposing [inmate-plaintiff] to a substantial risk of harm)").

[43] 200 W. Va. 61, 488 S.E.2d 61 (1997).

law, or basis for making this decision."[44]  The Officers also cite Syllabus Point 4 in *Payne* to attack the sufficiency of the circuit court's order denying their motion to dismiss.[45] There, we held, in part, that "a circuit court's order *denying summary judgment* on qualified immunity grounds *on the basis of disputed issues of material fact* must contain sufficient detail to permit meaningful appellate review."[46]  Here, we review an order denying the Officers' motion to dismiss on qualified immunity grounds.  The order is adequate to permit our review under applicable law.

Finally, the Officers invoke *West Virginia State Police v. J.H. by & through L.D.*[47]  In that case, we concluded that the circuit court erred when it deferred ruling on a motion to dismiss to permit plaintiff to engage in discovery, even though the circuit court also found that plaintiff had not pleaded a violation of his clearly established, substantive due process rights.[48]  There, the complaint lacked factual allegations as to the circumstances of the plaintiff's arrest, so it did not allow for the inference that law enforcement officials' actions during the arrest were unreasonable—an inference necessary

---

[44] *Id.* at 65, 488 S.E.2d at 65.

[45] *W. Va. Dep't. of Health and Human Resources v. Payne*, 231 W. Va. 563, 746 S.E.2d 554 (2013).

[46] Sy. Pt. 4, in part, *id.*

[47] *J.H.*, 244 W. Va. at 720, 856 S.E.2d at 679.

[48] *Id.* at 741, 856 S.E.2d at 700.

to demonstrate plaintiff's claim of excessive force.[49]  As detailed above, the amended complaint contains numerous factual allegations from which a factfinder may infer that the Officers knew of the substantial risk of harm posed to Robbins by exposure to other inmates—a different kettle of fish from the amended complaint in *J.H.*, which was "barebones . . . [with] no facts asserted . . . explaining in even a skeletal way . . . the circumstances" of the plaintiff's arrest.[50]  For that reason, our analysis in *J.H.* does not mandate reversal of the circuit court's order as to the Officers.

In sum, Robbins's amended complaint "'set[s] forth enough information to outline the elements of [a violation of his Eighth Amendment right to be free from sexual assault by other inmates] or permit inferences to be drawn that [those] elements exist.'"[51] The Officers do not contest that that right is clearly established.  So, we decline to reverse the circuit court's order on the errors assigned by the Officers on appeal.

**B.    The Division of Corrections**

---

[49] *Id*. at 739, 856 S.E.2d at 698.

[50] *Id*. at 738 n.23, 856 S.E.2d at 697 n.23.

[51] *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 521, 854 S.E.2d 870, 883 (2020) (quoting *Fass v. Nowsco Well Serv., Ltd.*, 177 W. Va. 50, 52, 350 S.E.2d 562, 563 (1986)).

Robbins named DOC in two counts[52] of the amended complaint: Count IV (Failure to Train and Adequately Supervise) and Count V (Vicarious Liability). DOC moved to dismiss those claims on qualified immunity grounds. The circuit court denied DOC's motion, and DOC now assigns three errors to that decision:

> 1.   The circuit court failed to correctly apply the 'heightened pleading' required when the defense of qualified immunity is asserted.[53]
>
> 2.   The circuit court erred by not dismissing Count IV of the Amended Complaint for the failure to supervise, retain, or hire on the grounds of qualified immunity because said activities are discretionary functions and there is no proper pleadings [sic] of constitutional or statutory violations against [DOC].
>
> 3.   The circuit court erred by not dismissing Count V (misidentified as a duplicate Count IV) of the Amended Complaint as to [DOC] for vicarious liability.

[52] Robbins also named DOC in Count VI, "Attorneys' Fees." DOC moved to dismiss that claim as well, arguing that it cannot be made liable for Robbins's attorneys' fees under 42 U.S.C. §§ 1983 and 1988. On appeal, DOC contends that the circuit court erred when it failed to dismiss that claim. We decline to address this argument; our review extends to questions of immunity and no further. Of course, DOC is not precluded from challenging this claim in the future.

[53] This procedural argument drives DOC's substantive arguments regarding Robbins's alleged failure to overcome DOC's claim to qualified immunity. Again, the circuit court's order is not a model, but it does acknowledge *Hutchison* and identifies allegations in the amended complaint that inform its conclusions. This contrasts with the order we recently deemed insufficient in *West Virginia Regional Jail & Correctional Facility Authority v. Est. of Grove*, 244 W. Va. 273, 852 S.E.2d 773 (2020). There, we reversed an order denying motions to dismiss based on qualified immunity grounds where the order neither referenced the heightened pleading discussed in *Hutchison* nor conducted any "examination or analysis of our well-established qualified immunity framework." *Id.* at 282, 284, 852 S.E.2d at 782, 784. Based on the contrast between those circumstances and the ones present, we decline to reverse the circuit court's order denying DOC's motion to dismiss Robbins's claims on this ground, alone.

21

Robbins responds that the circuit court paid appropriate heed to the heightened pleading required in cases implicating immunities, and that the allegations in the amended complaint are sufficient to overcome DOC's claim to qualified immunity.

### 1.  Failure to Train and Adequately Supervise

DOC moved to dismiss Robbins's negligent training and supervising claim on the grounds of qualified immunity.  The circuit court denied that motion, and DOC now presents the same arguments to this Court:  supervising and training are discretionary functions and Robbins has failed to allege that DOC violated his clearly established statutory or constitutional right while training and supervising the Officers.  Robbins responds that DOC is duty-bound to train and supervise its employees to promote a safe environment for inmates and compliance with the PREA.  Robbins reasons that the Officers' alleged violations of his Eighth Amendment rights demonstrate the insufficiency of DOC's training and supervision, and that dismissal of this claim is premature.

To refresh, "the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency . . . with respect to the discretionary judgments, decisions, and actions of the officer."[54]  That immunity protects the agency unless "a reviewing court . . . determine[s that] the plaintiff has demonstrated that such acts or

---

[54] Syl. Pt. 6, in part, *Clark v. Dunn,* 195 W. Va. 272, 465 S.E.2d 374 (1995).

omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known . . . ."[55] So, the first question presented by DOC's assignment of error is whether training employees and supervising them are discretionary functions.

They are. "It is well-established that 'the broad categories of training, supervision, and employee retention . . . easily fall within the category of "discretionary" governmental functions.'"[56] Because training and supervising are discretionary functions, DOC is entitled to immunity from Robbins's claim unless Robbins has also alleged that DOC violated a clearly established statutory or constitutional right in training or supervising the Officers of which it reasonably should have known.[57]

Robbins has not done that. He has made specific allegations about the alleged violation of his constitutional rights by the Officers, but he has not made equivalent allegations against DOC. In fact, Robbins has not alleged any act or omission by DOC beyond investigating the alleged assault and terminating Whetzel's employment. Further,

_____

[55] Syl. Pt. 11, in part, *A.B.*, 234 W. Va. at 492.

[56] *J.H.*, 244 W. Va. at 740, 856 S.E.2d at 699 (quoting *A.B.*, 234 W. Va. at 514, 766 S.E.2d at 773).

[57] *See A.B.*, 234 W. Va. at 515, 766 S.E.2d at 774 ("To the extent that [A.B.] can nonetheless demonstrate that the WVRJCFA violated a 'clearly established' right or law with respect to its training, supervision, or retention of [corrections officer] D. H., the WVRJCFA is not entitled to immunity.").

Robbins has not alleged that any act or omission by DOC violated a clearly established constitutional or statutory right of which DOC reasonably should have known. Instead, Robbins has alleged that DOC breached a duty to train and supervise its employees to promote a safe environment for inmates. Simply put, Robbins has alleged that DOC acted negligently, but not in violation of a clearly established right or law.[58]

Admittedly, Robbins has also alleged that DOC "had a duty to adequately train and supervise its correctional officers in a manner that promoted compliance with the Prison Rape Elimination Act." That allegation does not demonstrate the violation of a clearly established statutory right for two reasons. First, Robbins hasn't alleged that DOC violated the PREA; he has alleged that DOC failed to promote compliance with it. Second, and more to the point, "the PREA merely authorizes grant money, and creates a commission to study the prison rape issue. The statute does not grant prisoners any specific rights."[59] So, "neither the PREA, nor the standards promulgated at its direction, provide [Robbins] with an adequate basis upon which to strip [DOC] of its immunity."[60] In sum, the allegations in the amended complaint are insufficient to deprive DOC of the immunity from suit that otherwise attaches to its discretionary functions of training and supervising

---

[58] *See* Syl. Pt. 1, in part, *Dicken v. Liverpool Salt & Coal Co.*, 41 W. Va. 511, 23 S.E. 582 (1895) ("Negligence is the violation of the duty of taking care under the given circumstances.").

[59] *A.B.*, 234 W. Va. at 515, 766 S.E.2d at 774 (cleaned up).

[60] *Id.*

employees. For that reason, the circuit court erred when it denied DOC's motion to dismiss Count IV (Failure to Train and Adequately Supervise).

### 2. Vicarious Liability

DOC argues that the circuit court erred when it denied its motion to dismiss Count V (Vicarious Liability). DOC argued to the circuit court that dismissal of this claim was warranted because the Officers' alleged conduct occurred outside the scope of their employment with DOC. The circuit court found to the contrary. On appeal, DOC again argues that the circuit court's finding is erroneous because the Officers' "alleged actions and inactions cannot be construed or interpreted to be connected, related, or an ordinary and natural incident of their duties at the Potomac Highlands Regional Jail, or otherwise sanctioned or endorsed in any way by" DOC. DOC also asserts that Robbins has alleged "willful and malicious acts and omissions [by the Officers] that would be intended to put [Robbins] in danger of physical harm" that "cannot be reasonably interpreted to be within [DOC's] authorized scope of employment for its staff." Robbins responds that DOC is not immune from liability for its employees' alleged violation of a clearly established right or fraudulent, malicious, or oppressive conduct if that conduct nonetheless occurred within the employee's scope of employment.

25

*West Virginia Regional Jail & Correctional Facility Authority v. A.B.* guides

our analysis of DOC's argument.[61]  Syllabus Point 12 of *A.B.* instructs that DOC's assertion

of immunity from Robbins's vicarious liability claim turns on the doctrine of respondeat

superior.  That is,

> [i]f the plaintiff identifies a clearly established right or law which has been violated by the acts or omissions of the State, its agencies, officials, or employees, or can otherwise identify fraudulent, malicious, or oppressive acts committed by such official or employee, the court must determine whether such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment. To the extent that such official or employee is determined to have been acting outside of the scope of his duties, authority, and/or employment, the State and/or its agencies are immune from vicarious liability, but the public employee or official is not entitled to immunity in accordance with *State v. Chase Securities, Inc.,* 188 W.Va. 356, 424 S.E.2d 591 (1992) and its progeny. *If the public official or employee was acting within the scope of his duties, authority, and/or employment, the State and/or its agencies may be held liable for such acts or omissions under the doctrine of respondeat superior along with the public official or employee.*[62]

Here, DOC does not argue that Robbins fails to "identif[y] a clearly established right or

law which has been violated by the acts or omissions of" the Officers, or that he has failed

"otherwise [to] identify fraudulent, malicious, or oppressive acts committed by" them.[63]

Rather, DOC contends that the allegations in Robbins's amended complaint cannot trigger

---

[61] *Id*.

[62] Syl. Pt. 12, *id*. at 492, 766 S.E.2d at 751 (emphasis added).

[63] *Id*.

26

the doctrine of respondeat superior because the Officers' alleged acts or omissions occurred outside the scope of their employment with DOC.

"'An act specifically or impliedly directed by the master, or any conduct which is an ordinary and natural incident or result of that act, is within the scope of the employment.'"[64]  The actor's purpose is key, as we emphasized in *A.B.*:

> The "purpose" of the act is of critical importance and this element echoes throughout our jurisprudence. Moreover, the Restatement (Second) of Agency § 228 (1958) states that a servant is within scope of employment if the conduct is 1) *of the kind he is employed to perform;* 2) occurs within the authorized time and space limits; 3) it is actuated, at least in part, by a *purpose to serve the master,* and; 4) if force is used, the *use of force is not unexpectable by the master.* (Emphasis added).[65]

"'Scope of employment' is a relative term and requires a consideration of surrounding circumstances including the character of the employment, the nature of the wrongful deed, the time and place of its commission and the purpose of the act."[66]  "'Conduct of a servant is not within the scope of employment if it is *different in kind from that authorized*, far beyond the authorized time or space limits, or *too little actuated by a purpose to serve the*

---

[64] Syl. Pt. 6, *Courtless v. Jolliffe*, 203 W. Va. 258, 507 S.E.2d 136 (1998) (quoting Syllabus, *Cochran v. Michaels*, 110 W. Va. 127, 157 S.E. 173 (1931)).

[65] *A.B.*, 234 W. Va. at 510, 766 S.E.2d at 769 (internal note omitted).  Robbins does not allege that the Officers used force upon him, so prong 4 does not factor into our analysis.

[66] *Griffith v. George Transfer & Rigging, Inc.*, 157 W. Va. 316, 326, 201 S.E.2d 281, 288 (1973).

27

*master*.'"[67]  "Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when the facts are undisputed and no conflicting inferences are possible."[68]

Turning back to the specific allegations in the amended complaint, we conclude that they are sufficient to permit his vicarious liability claim to proceed.  Prongs (1) and (2) of the Restatement test adopted in *A.B.* are easily satisfied:  Robbins alleges that the Officers were working on the A-6 pod in their capacities as tower guard (Whetzel) and rover (Blancarte) at the time of alleged assault.  Regarding prong (3)—whether the Officers' acts and omissions were motivated, at least in part, by the motivation to serve DOC—DOC contends that, as a matter of law, they were not because the Officers allegedly engaged in "serious violations of duty which can only equate to actions taken outside the scope of their employment, if true."  But "an employer may be liable for the conduct of an employee, even if the specific conduct is unauthorized or contrary to express orders, so long as the employee is acting within the general scope of his authority and for the benefit of the employer."[69]  And, as our cases demonstrate, "intentional or reckless acts of an employee or supervisor may be imputed to the employer, if those acts were committed

[67] *A.B.*, 234 W. Va. at 510, 766 S.E.2d at 769 (emphasis in original) (quoting RESTATEMENT (SECOND) OF AGENCY § 228 (1958)).

[68] *Id*. at 509, 766 S.E.2d at 768 (internal quotations omitted).

[69] *Travis v. Alcon Lab., Inc.*, 202 W. Va. 369, 381, 504 S.E.2d 419, 431 (1998).

28

within the scope of employment."[70] For those reasons, the allegations in Robbins's amended complaint do not permit us to conclude, at this stage, that the Officers' alleged acts and omissions occurred beyond the scope of their employment with DOC and we affirm the circuit court's order denying DOC's motion to dismiss Count V of the amended complaint.

## IV. CONCLUSION

[70] *Id.*; *see also* Syl. Pt. 6, *id.* ("Where a supervisor of an employer has, within the scope of employment, caused, contributed to, or acquiesced in the intentional or reckless infliction of emotional distress upon an employee, then such conduct is attributed to the employer, and the employer is liable for the damages that result."); *W. Va. Div. of Nat. Res. v. Dawson*, 242 W. Va. 176, 193, 832 S.E.2d 102, 119 (2019) (genuine issues of material fact precluded summary judgment of vicarious liability claim against the West Virginia Division of Natural Resources where "the particular function being carried out by the DNR employees, i.e. investigation of Mr. Dawson's conduct, was certainly within the scope of their employment" but "the manner in which [officers] carried out this function"—including violation of division policies, failure to secure and review evidence, and sustaining unsubstantiated complaint—"raise[d] conflicting inferences and questions of fact as to whether such conduct was in the scope of employment"); *Porter v. South Penn Oil Co.*, 125 W. Va. 361, 366, 24 S.E.2d 330, 333 (1943) (no vicarious liability for employer where employee committed assault "in pursuance of a personal grudge, and that his conduct was wholly divorced from his employment by the oil company"); Syl. Pt. 1, *Meadows v. Corinne Coal & Land Co.*, 115 W. Va. 522, 177 S.E. 281 (1934) ("'A corporation is liable for a malicious prosecution by its agent, acting within the scope of his employment and in furtherance of his company's business, notwithstanding the company may not have expressly authorized or ratified his act.' *Fetty v. Huntington Loan Co.*, 70 W. Va. 688, 74 S.E. 956."); *Nees v. Julian Goldman Stores*, 106 W. Va. 502, 503, 146 S.E. 61, 62 (1928) (employee on debt-collection errand on behalf of employer acted within the scope of his employment when he engaged in a "violent altercation" with debtor); *cf. A.B.*, 234 W. Va. at 510, 766 S.E.2d at 769 (guard's criminal, sexual assault of inmate fell outside scope of employment).

For the reasons discussed above, we affirm the circuit court's denial of Officers Blancarte and Whetzel's motions to dismiss Robbins's amended complaint. We reverse that part of the circuit court's order denying DOC's motion to dismiss Count IV of the amended complaint (Negligent Training and Supervision) and affirm that part of the order denying DOC's motion to dismiss misnumbered Count IV (Vicarious Liability). We remand this case for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.